## ALBIS CO. v. MUNSON.

(Circuit Court of Appeals, Second Circuit. June 10, 1905.)

No. 227.

SHIPPING—CHARTER HIRE—LOSS OF TIME WAITING FOR DOCKING.

Under a time charter providing that the vessel should be docked and cleaned at least once every six months if the charterer thought necessary, hire to be suspended until she was again in proper condition for service, but requiring the charterer to send her at his own cost to a United States port where there were docking facilities, and to pay for all time lost in shifting ports, he was liable for a month's time lost while waiting for the repairing of a dock, during which time she was subject to his orders and could have been ordered by him to another port.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 130 Fed. 32.

Charles S. Haight, for appellant.
J. Parker Kirlin, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The careful opinion of Judge Adams in the court below dispenses with any necessity for an extended statement of the views of this court. We adopt his findings of fact, and concur in the legal conclusions reached by him.

The charter originally relieved the charterer from paying hire while the steamship was being docked for cleaning and painting her bottom, and until she was again in a proper state for service, and allowed him to require her to be docked once in six months; but, as it was subsequently changed, it provided that the charterer should send the steamer to a United States port where there were facilities for docking, and, in case she should be obliged to shift ports in order to dock, the charterer should pay for all time lost on shifting ports, all coal consumed, and all port charges.

We construe these later provisions as intended to protect the shipowner against any unfair exercise of the privilege of the charterer to have the ship docked, by requiring the latter to send her to a port where the ordinary facilities for docking such a steamer should be available at the time or within a reasonable time, and, if found not available, to send her to some other port where there should be available facilities, and bear the expense of sending her there. Their effect is to cause the charterer to remain liable for the ship's hire until he sends her to a port where docking facilities are available; but when she is sent to a proper port, the charterer's liability for hire is suspended, and it is for the owner to make necessary arrangements to have her docked. The charterer sent the steamship to Mobile. She reached that place on December 5th. The dock was out of condition when the steamer reached Mobile, and also when she was ordered by the charterer to go there. Upon information that the dock would be in order shortly, the steamer was allowed to remain at Mobile; but on December 12th, when an effort was made to dock her, it was found that the condition of the dock rendered it impossible, and it became apparent that the dock would not be in condition to receive the steamer before the end of the month, and doubtful whether it would be then. On December 31st it became obvious that any further delay of the vessel would be useless, and on January 4th her owner ordered her to, and she sailed for, New Orleans, reaching that port late the next day, and was docked there on January 6th.

During the time the steamer was at Mobile the charterer was insisting that the steamer was on the owner's time, and the owner was insisting that she was on the charterer's time, and frequent communications passed between them, in which the owner asked for instructions, and the charterer refused to give them.

When the charterer learned that the dock at Mobile was out of repair, he should have sent the steamship promptly to another port, unless he preferred to remain liable for the hire, or to wait for the repair of the dock at Mobile and meanwhile remain liable for the hire. The master being under the orders and directions of the charterer, and it being the charterer's duty to furnish the master from time to time all requisite instructions and sailing directions, the owner was not under any obligation to select a new port of docking. It is true that the owner was at liberty to send her to another port, but this was because the charterer in effect authorized the owner to take possession of her until she should be docked.

The general rule is familiar that where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as, with reasonable endeavor and expense, he could not have prevented. It is urged that this rule required the owner to take steps to minimize the loss likely to accrue by reason of the delay in having the vessel sent to New Orleans or some other port where there were proper docking facilities. But this was a loss which would accrue to the charterer, and not to the owner; and to apply the rule to the pres-

ent case would have required the owner to do what at any time and every day the charterer could have done himself, and should have done.

The decree is affirmed, with interest and costs.